UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-03082

CONSIDINE INVESTMENT COMPANY,

        Plaintiff,

v.

JOHN DOE I,

        Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Considine Investment Company ("Plaintiff" or "CIC") files the following Complaint against John Doe I ("Defendant"):

### JURISDICTION AND VENUE

1. This action arises under the Constitution and the laws of the United States.

2. Plaintiff asserts federal claims pursuant to 18 U.S.C. § 2701, 18 U.S.C. § 1030, and 18 U.S.C. § 2511.

3. Plaintiff also asserts a state law claim arising out of the same case or controversy.

4. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 *et seq.* The Court has discretion to exercise supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

5.  This Court has personal jurisdiction over Defendant because Defendant's actions that harmed Plaintiff constitute sufficient minimum contacts with the District of Colorado to satisfy the terms of constitutional due process.

6.  Venue is proper in the District of Colorado. 28 U.S.C. § 1391(b).

## PARTIES

7.  Plaintiff is a Colorado corporation with its principal place of business in Denver, Colorado.

8.  Defendant is the person, or potentially multiple persons, who gained unauthorized access to the email account of a CIC employee, intercepted email communications between CIC's employee and outside individuals, and caused CIC to make two wire transfers to fraudulent bank accounts, through the use of spoof domain names and business email compromise ("BEC") cyberattacks. At this time, Plaintiff does not know the identity of Defendant. When Defendant's identity is known, Plaintiff will amend this Complaint to identify that person and any other persons associated with or involved in Defendant's crimes against Plaintiff.

## FACTS

9.  CIC provides administrative services to the Considine Family Foundation (the "Foundation"), a Colorado tax-exempt nonprofit corporation engaged in philanthropy, grant-making, and volunteer activities, as well as other Considine family companies. The services CIC provides to the Foundation include vendor relationship management and treasury services.

10. CIC's Vice President and Treasurer (the "Treasurer") provided certain treasury and financial services to the Foundation.

2

11.     Defendant targeted the Treasurer's CIC email account in a BEC cyberattack and, unbeknownst to the Treasurer, gained unauthorized access to the Treasurer's email account for a period of weeks in Fall 2021. Based on CIC's forensic investigation into the BEC incident (the "Incident"), Defendant, in at least October and November 2021, gained unauthorized access to the Treasurer's email account and for at least six weeks surreptitiously monitored and manipulated her email communications (both sent and received). Upon information and belief, Defendant used a Microsoft Azure IP address to log into the Treasurer's email account.

12.     During that time, Defendant created Microsoft Outlook rules to move emails from the Treasurer's Inbox to her Outlook RSS folder and to mark those emails as read. That enabled Defendant to read, respond to, and forward such emails without the Treasurer's knowledge, and without her realizing her email account had received such emails. These Outlook rules applied to emails received from certain internet domains for vendors and other companies that worked with CIC or the Foundation, including "bartlitbeck.com," "bartlit-beck.com," and "abdielcap.com."

13.     During the time Defendant had unauthorized access to the Treasurer's email account, the Foundation asked CIC and the Treasurer to send a wire transfer of $5,000,000 from the Foundation's brokerage account with Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill") to the investment firm Abdiel Capital Advisors ("Abdiel") to fund a new investment account to be managed by Abdiel.

14.     On or about November 22, 2021, an employee of Abdiel sent an email to CIC's Treasurer from a legitimate Abdiel email address, forwarding Abdiel's wire transfer instructions.

15. On or about the same day, November 22, 2021, Defendant created and acquired the spoof email domain of "abdelcap.com"—i.e., removing the "i" from abdielcap.com—through Wild West Domains, LLC, using Microsoft Azure as the Domain Name System record.

16. Defendant forwarded the legitimate Abdiel email from the Treasurer's account to an unauthorized spoof email account that looked like the Abdiel sender's legitimate email address.

17. Next, Defendant posed as the legitimate Abdiel employee and responded to the Treasurer's email to the spoof email account so that it would look like Defendant was replying to an email from her. The email was included in the same email chain as the earlier instructions from the legitimate Abdiel employee. Defendant requested that CIC's Treasurer wire the Foundation's funds to one of Abdiel's "subsidiary" accounts named "Abdiel Capital LP" and provided wire transfer instructions for Defendant's fraudulent Wells Fargo Bank account.

18. Plaintiff has requested that Wells Fargo provide Plaintiff with information regarding Defendant's bank account and the individual who opened the account, but Wells Fargo has refused to voluntarily provide such information, even though Wells Fargo knows that Defendant committed a crime against Plaintiff with the help of Wells Fargo.

19. Because CIC's Treasurer was still unaware of Defendant's unauthorized access to her email account and the fact that she was communicating with a cybercriminal, rather than Abdiel's representative, she authorized the $5,000,000 wire transfer from the Foundation's Merrill account to Defendant's fraudulent Wells Fargo Bank account on or about November 26, 2021.

20. On November 26, 2021, Merrill wired the money to Defendant's fraudulent Wells Fargo bank account.

21. Within days, Abdiel's representative emailed CIC's Treasurer to notify her that Abdiel had not yet received the Foundation's wire transfer. The Microsoft Outlook email rules that had been set-up by Defendant, however, automatically marked that email from the legitimate Abdiel email domain as "read" and then moved that email into the RSS folder to hide it from the Treasurer. As a result of Defendant's illegal scheme, CIC's Treasurer did not learn that the Foundation's wire transfer had been intercepted by Defendant and misdirected to Defendant's bank account until December 6, 2021.

22. By the time CIC discovered the wire transfer fraud and theft of the Foundation's funds, Defendant or one or more of Defendant's co-conspirators already had transferred most of the Foundation's stolen funds out of Defendant's Wells Fargo Bank account to other bank accounts in foreign countries. CIC promptly reported the crime to the Federal Bureau of Investigation. U.S. law enforcement authorities, however, were able to seize only approximately $1,874,000 of the stolen funds.

23. Promptly after discovering the fraud, CIC investigated the Incident. Through CIC's investigation, CIC discovered that Defendant likely had unauthorized access to, monitored, and manipulated the Treasurer's email account since at least October 2021.

24. CIC also learned through its investigation that Defendant had stolen a second wire transfer of a much smaller sum in October 2021. That earlier wire transfer had been intended to pay legal fees owed to the law firm Bartlit Beck LLP. Specifically, on or about October 25, 2021, the Treasurer sent an email to the legitimate domain "bartlit-beck.com" regarding the

unpaid legal fees. On or about October 26, 2021, CIC's Treasurer received a reply from Defendant sent from a spoof domain "baritltbeck.com," which was intended to deceive the Treasurer into believing that the email was from the law firm. Defendant had registered and acquired the spoof domain "baritltbeck.com" from Wild West Domains, LLC, on October 25, 2021.

25. On October 27, 2021, Defendant used the spoof domain to send to CIC's Treasurer wire instructions to pay the invoice for legal services. Defendant followed up on the status of the payment on November 2, 2021, using another spoof domain "bartilt-beck," which transposed the "i" and the "l" in "bartlit-beck," and was also intended to deceive the Treasurer into believing that the email was from the law firm. Thereafter, the Treasurer authorized a wire transfer in the amount of $42,850 to Defendant's fraudulent bank account at Bank of Montreal.

26. Based on CIC's forensic investigation into the Incident, the similarity in tactics between the fraudulent wire transfers involving Bartlit Beck and Abdiel suggest that either Defendant or Defendant together with one or more co-conspirators committed both crimes and obtained access to the Treasurer's email account by no later than October 25, 2021. Such unauthorized access to the Treasurer's email account lasted until early December 2021.

27. As a result of Defendant's BEC and other fraudulent activities, CIC and the Foundation suffered substantial harm, including financial losses totaling more than approximately $5,250,000, which losses include CIC's costs of investigating the Incident and pursuing recovery of the stolen funds. To date, CIC and the Foundation have been able to recover only $1,874,525.70 of the stolen funds from U.S. law enforcement entities.

## CLAIMS FOR RELIEF

<u>CLAIM 1: VIOLATION OF THE STORED COMMUNICATIONS ACT</u>
(18 U.S.C. §§ 2701 *et seq.*)

28. Plaintiff incorporates paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. When Defendant perpetrated its BEC scheme and gained unauthorized access to the Treasurer's email account, Defendant intentionally accessed without authorization a facility through which an electronic communication service is provided.

30. Through the unauthorized access to CIC's Treasurer's email account, Defendant obtained access to the Treasurer's emails while they were in electronic storage in her email account.

31. Defendant knowingly obtained unauthorized access to the Treasurer's emails.

32. Through the unauthorized access to the Treasurer's emails and a scheme to defraud CIC, Defendant caused CIC to make wire transfers totaling more than $5,000,000 to fraudulent bank accounts controlled by Defendant or his co-conspirators, or both.

33. Defendant's actions were knowing and intentional in that Defendant intentionally gained unauthorized access to the Treasurer's email accounts and intentionally caused her to authorize wire transfers to fraudulent bank accounts.

34. As a result of Defendant's actions, Plaintiff suffered actual damages of multiple millions of dollars, including costs incurred for Plaintiff's forensic investigation of Defendant's BEC attack and Plaintiff's pursuit of recovery of the Foundation's and CIC's stolen funds.

35.     Pursuant to 18 U.S.C. § 2707, Plaintiff may bring a civil action for Defendant's violation of 18 U.S.C. § 2701, at which time Plaintiff may recover actual damages, punitive damages, costs, and reasonable attorney fees, all of which Plaintiff seeks in this action.

CLAIM 2: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
(18 U.S.C. § 1030)

36.     Plaintiff incorporates paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.     Defendant, knowingly and with an intent to defraud CIC, accessed a protected computer without authorization when Defendant hacked into the Treasurer's CIC email account.

38.     By means of the unauthorized access to the Treasurer's email account, Defendant furthered the intended fraud by sending the Treasurer fraudulent wire instructions and thereby obtained two wire transfers totaling more than $5,000,000 from CIC and the Foundation's accounts to fraudulent bank accounts controlled by Defendant or one or more of Defendant's co-conspirators, or both.

39.     Defendant's actions were knowing and intentional in that Defendant intentionally gained unauthorized access to a protected computer through the Treasurer's email account and intentionally caused her to make wire transfers to fraudulent bank accounts.

40.     Defendant's unauthorized access caused damages and losses to Plaintiff.

41.     As a result of Defendant's actions, Plaintiff suffered actual damages of multiple millions of dollars, including costs incurred for Plaintiff's forensic investigation of Defendant's BEC attack and Plaintiff's pursuit of recovery of the Foundation's and CIC's stolen funds.

42. Pursuant to 18 U.S.C. § 1030(g), Plaintiff may bring a civil action for Defendant's violation of this section, at which time Plaintiff may recover actual damages, costs, and reasonable attorneys' fees, all of which Plaintiff seeks in this action.

<u>CLAIM 3: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT</u>
(18 U.S.C. §§ 2511, 2520)

43. Plaintiff incorporates paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44. Defendant intentionally intercepted electronic communications when Defendant gained unauthorized access to the Treasurer's CIC email account.

45. Defendant, through his interception of the Treasurer's emails, intentionally used the contents of those emails to cause the Treasurer to authorize wire transfers totaling more than $5,000,000 to fraudulent bank accounts controlled by Defendant or one or more of his co-conspirators, or both.

46. Defendant knew he obtained the contents of the Treasurer's emails through his interception of the Treasurer's electronic communications.

47. Defendant's actions were knowing and intentional in that Defendant intentionally intercepted the Treasurer's email communications knowing that the information contained in the emails was obtained through the interception of electronic communications.

48. As a result of Defendant's actions, Plaintiff suffered actual damages of multiple millions of dollars, including costs incurred for Plaintiff's forensic investigation of Defendant's BEC attack and Plaintiff's pursuit of recovery of the Foundation's and CIC's stolen funds.

49. Pursuant to 18 U.S.C. § 2520, Plaintiff may bring a civil action for Defendant's violation of 18 U.S.C. § 2511, at which time Plaintiff may recover actual damages, punitive damages, costs, and reasonable attorneys' fees, all of which Plaintiff seeks in this action.

CLAIM 4: CIVIL FRAUD

50. Plaintiff incorporates paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. Defendant, posing as a legitimate Abdiel employee, knowingly misrepresented Defendant's identity with the intention of tricking the Treasurer by sending her fraudulent emails from spoof email accounts created by Defendant and registered by Wild West Domains, LLC.

52. The Treasurer did not know her email communications authorizing the wire transfer were with Defendant, rather than legitimate Abdiel employees.

53. Defendant made this material misrepresentation with the intention that the Treasurer authorize the wire transfer from CIC or the Foundation's bank account to Defendant's fraudulent bank account at Wells Fargo Bank.

54. CIC's Treasurer relied on Defendant's misrepresentation to authorize the wire transfer of $5,000,000 from the Foundation's Merrill account to Defendant's fraudulent Wells Fargo bank account.

55. Defendant, posing as a legitimate Bartlit Beck employee, knowingly misrepresented Defendant's identity with the intention of tricking the Treasurer by sending her fraudulent emails from the spoof email domains "baritltbeck.com" and "bartilt-beck.com."

56. CIC's Treasurer did not know she was communicating by email with Defendant, rather than a legitimate Bartlit Beck employee, when the Treasurer authorized the wire transfer of Bartlit Beck's legal fees to Defendant's fraudulent Bank of Montreal bank account.

57. Defendant made this material misrepresentation to the Treasurer with the intention that the Treasurer authorize the wire transfer to Defendant's fraudulent bank account at Bank of Montreal.

58. CIC's Treasurer relied on Defendant's misrepresentations to authorize the wire transfer of $42,850 to Defendant's fraudulent bank account at Bank of Montreal.

59. As a result of Defendant's actions, Plaintiff suffered actual damages of multiple millions of dollars, including costs incurred for Plaintiff's forensic investigation of Defendant's BEC attack and Plaintiff's pursuit of recovery of the Foundation's and CIC's stolen funds.

**PRAYER FOR RELIEF**

Plaintiff requests the Court enter judgment in Plaintiff's favor and against Defendant and his co-conspirators (if any), and award Plaintiff all relief allowed by law, and in an amount to be proved at trial, including but not limited to:

(a) Compensatory damages;

(b) Incidental and consequential damages;

(c) Statutory damages;

(d) Punitive or exemplary damages;

(e) Plaintiff's attorneys' fees and costs incurred in this action;

(f) Pre- and post-judgment interest at the appropriate lawful rates; and

(e) Any further legal or equitable relief this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated:  November 29, 2022.                              Respectfully submitted,


                                                        *s/ Michael T. Williams*
                                                        Michael T. Williams
                                                        Jennifer J. Oxley
                                                        Miranda B. Worthington
                                                        Wheeler Trigg O'Donnell LLP
                                                        370 Seventeenth Street, Suite 4500
                                                        Denver, CO 80202
                                                        Telephone:   303.244.1800
                                                        Facsimile:    303.244.1879
                                                        Email:   williams@wtotrial.com
                                                                     oxley@wtotrial.com
                                                                     worthington@wtotrial.com

                                                        Attorneys for Plaintiff Considine Investment Company